UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------

ALEXANDER KRIVCHENKO, as
Personal Representative of the Estate
of TATYANA PETROVNA KRIVCHENKO,
deceased, NATALIA MASLOVA, as
Personal Representative of the Estate of
DMITRY VLADIMIROVICH MASLOV,
deceased, IGOR OSIPOV, as the
Personal Representative of the Estate
of LYUBOV VICTORVNA OSIPOVA,
deceased, IGOR OSIPOV, as the Personal
Representative of the Estate of ANASTASIA
OSIPOVA, deceased, IGOR OSIPOV, as
the Personal Representative of the Estate of
GREGORY IGOREVICH OSIPOV,
deceased, NADEZHDA PETTAY, as the
Personal Representative of the Estate
of VLADIMIR LEONIDOVICH PETTAY,
deceased, OLGA LOKHMATOVA, as
the Personal Represenative of the Estate
of FARKHAD SAMATOVICH SAMATOV,
deceased, and SVETLANA SOFRINA, as the
Personal Representative of the Estate of
PAVEL GENNADYEVICH SOFRIN,
deceased,

        Plaintiffs,

 -vs-                   **1:13-CV-820**

CLINTONDALE AVIATION, INC.,

        Defendants.
--------------------------------------------------

**THOMAS J. MCAVOY**
**Senior United States Judge**

### DECISION and ORDER

 Before the court are Defendant's motion for summary judgment and Plaintiffs'

motion for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2) in this case involving the fatal crash of an commercial airliner in Petrozavodsk, Russia in 2011. The parties have filed oppositions to these motions.

I.  BACKGROUND[1]

This action arises out of the crash of RusAir Flight 9605 ("Flight 9605") in Petrozavodsk, Russia on June 20, 2011. (Defendant's Statement of Material Facts, dkt. # 22 ("Defendant's Statement") at ¶ 1a[2]). The crash resulted in the deaths of 39 passengers and 8 crew members. (Id.). The Plaintiffs in this action are Russian citizens who are the representatives of the estates of a number of passengers who died in the crash. (Id. at ¶ 1b). The Defendant, Clintondale Aviation, Inc. ("Clintondale") is a closely held New York corporation with a principal place of business in Ulster County,

---

[1]Defendant has moved for summary judgment. Pursuant to Local Rule 7.1(a)(3), a party who seeks summary judgment must provide a "Statement of Material Facts" that "set[s] forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the State of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits." L.R. 7.1(a)(3). A party opposing a motion for summary judgment is required to respond to this statement. Id. The response is to "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." Id. The Rule also warns that "<u>[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.</u>" Id. (emphasis in original). Plaintiffs did not file a response to Defendant's statement, which contains proper citations to the record. The Court will therefore adopt the facts in Defendant's statement which are properly supported by appropriate citations to the record.

[2]Defendant's Statement contains two paragraphs number "1." For the sake of clarity in this opinion, the Court has labeled the first of the those paragraphs "1a" and the second "1b."

2

New York.  (Id. at ¶ 2).  Clintondale brokers air charter services to individuals and corporations traveling within the Russian Federation and the former Soviet Republics. (Id. at ¶ 3).   The flight that crashed and is the subject of this action was operated by RusAir, a Russian Closed Joint-Stock Aviation Company.  (Id. at ¶ 4).  Rus Air was the registered owner of that aircraft.  (Id.).  Flight 9605 was chartered by RusLine, another Russian Closed Joint-Stock Aviation Company.  (Id. at ¶ 5).

Flight 9605 crashed on June 20, 2011.  On that date, RusLine had chartered RusAir to transport 43 passengers from Moscow, Russia to Petrozavodsk, Russia.  (Id. at ¶ 8).   RusAir operated that flight, which was marketed as RusLine Flight 234.  (Id. at ¶ 9).   The airplane crashed during its landing approach.  (Id. at ¶ 10).  RusAir's flight crew had attempted to land in poor conditions without visual confirmation of the airport's runway.  (Id.).  As a result, thirty-nine passengers and eight crew members were killed. (Id. at ¶ 11).

Neither RusAir or RusLine is a party to this action.  (Id. at ¶ 5).  Clintondale did not own, operate, manage, control or act on behalf of RusAir at any time from the company's formation to the present.  (Id. at ¶ 6).  Clintondale did not operate or charter Flight 9605 and did not own the aircraft involved in the accident.  (Id. at ¶ 7). Clintondale was formed by seven individuals in 1992.  (Id. at ¶ 12).  Among those individuals was Clintondale's current President and Chief Executive Officer, Yuri Konovalov.  (Id.).  Konovalov joined with six other investors in 1996 to form RusAir.  (Id. at ¶ 13).  None of these other individuals had any involvement with Clintondale.  (Id.). Apart from Konovalov, Clintondale and RusAir did not share any shareholders or directors.  (Id. at ¶ 14).

3

After the investors formed RusAir, Clintondale contracted with the company on a non-exclusive basis for air transportation for Clintondale clients within the Russian Federation. (Id. at ¶ 15). Konovalov held shares in both RusAir and Clintondale from 1994 to 2008. (Id. at ¶ 16). RusAir and Clintondale remained separate and district companies during this period. (Id.). Konovalov did not manage or direct the daily operations of RusAir, either individually or in his capacity as Clintondale President. (Id. at ¶ 17). Clintondale had no control over RusAir's daily activities. (Id.). RusAir appointed Yuri M. Shanin as the Director General of RusAir; Shanin was responsible for operations and management of the company. (Id. at ¶ 18). Shanin reported to the RusAir board of directors. (Id. at ¶ 19). He was responsible for hiring, firing and supervising the company's employees. (Id.).

RusAir and Clintondale operated as separate entities. RusAir was responsible for its aircrafts' maintenance. (Id. at ¶ 20). The company implemented a safety maintenance program. (Id.). This "Technical Support and Control Group" was designed to improve RusAir's operations by undertaking maintenance and safety audits on RusAir-operated aircraft. (Id.). RusAir and Clintondale had separate finances and revenue bases. (Id. at ¶ 21). The companies filed separate taxes. (Id.). Clintondale had offices in Moscow that the company rented. (Id. at ¶ 22). These offices were used only for Clintondale's operations and used solely by Clintondale employees. (Id.). Clintondale also owned separate corporate property. (Id. at ¶ 23). Among this property was a TU-134 aircraft that Clintondale leased to RusAir in 2009 through a "Dry Lease

4

Agreement."[3]  This aircraft was not involved in the June 20, 2011 accident.  (Id. at ¶ 24).

Konovalov and the other founding members of RusAir sold their shares to two Russians, Valentina Kiselkova and Galina Kuprikova, in October 2008.  (Id. at ¶ 25).  Since this sale, Clintondale and RusAir have remained separate entities with no overlapping ownership or management.  (Id. at ¶ 26).

Plaintiffs filed their complaint in this action on June 20, 2013.  (See dkt. # 1).  On June 17, 2014, Defendant filed the instant motion for summary judgment, along with supporting documents.  (See dkts. 20-24).  Plaintiffs filed both a response to the motion for summary judgment and a motion to voluntarily dismiss the complaint pursuant to Federal Rule of Civil Procedure 41(a)(2).  Defendant responded to these filings, bringing the case to its present posture.

## II.     LEGAL STANDARD

For reasons that will become apparent, the Court will first address Plaintiff's motion for voluntary dismissal.  Federal Rule of Civil Procedure 41(a)(2) provides in relevant part that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  FED. R. CIV. P. 41(a)(2).  "[D]ismissals" under this rule "are at the court's discretion[.]" D'Alto v. Dahon California, Inc., 100 F.3d 281, 283 (2d Cir. 1996).  "A voluntary dismissal without prejudice under Rule 41(a)(2) will be allowed 'if the defendant will not be prejudiced thereby.'" Id. (quoting Wakefield v. Northern Telecom, Inc., 769 F.2d 109, 114 (2d Cir. 1985)).  Such

---

[3]According to the National Business Aviation Association, a "dry lease" is an agreement where "the aircraft owner provides only the aircraft and no crew." See www.nbaa.org/admin/options/leasing (visited Sept. 17, 2014).

prejudice often occurs "when 'the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action.'" Id. (quoting Jones v. Securities & Exchange Commission, 298 U.S. 1, 19 (1936)). In the Second Circuit, courts consider a number of factors in determining whether the defendant would be prejudiced by dismissal. Id. Such "factors include: '[1] the plaintiff's diligence in bringing the motion; [2] any 'undue vexatiousness' on plaintiff's part; [3] the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial; [4] the duplicative expense of relitigation; and [5] the adequacy of plaintiff's explanation for the need to dismiss.'" Id. (quoting Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990)).

Defendant seeks summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is

6

able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment, who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

### III. ANALYSIS

#### A. Plaintiffs' Motion

Rather than offering any sort of detailed response to Defendant's motion, which demonstrates that no legal or business relationship existed between Clintondale and the Russian companies responsible for the crashed airliner, Plaintiffs instead argue that the Court should permit voluntary dismissal of the complaint without ruling on that motion. Such a dismissal would be without prejudice. Plaintiffs argue that Clintondale would suffer no prejudice from dismissing the case other than the need to defend against some future lawsuit. That sort of prejudice, Plaintiffs insist, does not counsel against granting voluntary dismissal. Moreover, Plaintiffs argue, discovery in this case has been limited to determining the relationships between Clintondale and the other Russian aviation companies. The number of interrogatories served has been few, only a small number of documents have been requested, and only one deposition has been taken. The mere fact that Defendant has filed a summary judgment motion is not a

7

sufficient basis to deny the motion for voluntary dismissal. Finally, Plaintiffs contend that they seek voluntary dismissal to preserve their right to bring the case in a Russian forum. Defendant responds that the evidence has demonstrated from the beginning of the case that there was no legal relationship between Clintondale and the Russian aviation companies. Despite this clear evidence, Plaintiffs refused to dismiss the case, forcing Defendant to file the instant summary judgment motion. Plaintiffs' refusal to dismiss the case also forced Defendant to defend an insurance-coverage action in New York court. Plaintiffs' attempt to dismiss the case, Defendant claims, is simply an effort to avoid a judgment that the evidence requires.

The Court will deny the motion for voluntary dismissal. The Court is guided heavily by the fact that Plaintiffs offer no argument to explain why the motion for summary judgment, supported by the discovery collected in the case, should not be granted. The Court is therefore forced to conclude that Plaintiffs' motion is less about preserving their right to proceed in another forum than it is about Plaintiffs' desire to avoid judgment. Such is not the purpose of a motion for voluntary dismissal. <u>See, e.g.</u>, <u>Soul Circus, Inc. v. Trevanna Entm't, Inc.</u>, 249 F.R.D. 109, 110 (S.D.N.Y. 2008) (denying motion for voluntary dismissal when plaintiff's conduct indicated that "plaintiff's goal may be to avoid an adverse determination on the merits."). A dismissal without prejudice would only permit the Plaintiffs to bring a baseless suit in another forum, and would therefore serve to undermine fairness and judicial economy.

Moreover, all of the factors discussed above weight against permitting voluntary dismissal. First, Plaintiffs only brought their motion after Defendant filed a motion for summary judgment, and only after the evidence in the case made clear that no

8

relationship existed between Defendant and the Russian aviation companies exposing Clintondale to liability. They were not diligent in taking action, but only self-protective. The discovery makes clear that Plaintiffs had the relevant information long before Defendant filed the summary judgment motion, but Plaintiffs refused to dismiss the action. See Emory v. New York, No. 11cv1774, 2013 U.S. Dist. LEXIS 64414, at *8 (E.D.N.Y. May 6, 2013) ("Plaintiffs woefully-belated concession on a fundamental legal issue in this matter . . . reflects on plaintiffs' lack of diligence[.]"). Second, Plaintiffs' failure to deny the facts that support Defendant's summary judgment motion, along with their expressed desire to have the case dismissed without prejudice so the action can be brought in another forum, indicate an undue vexatiousness. Plaintiffs do not deny their claim against Clintondale lacks merit, yet they seek to preserve their right to raise it again. Third, discovery has progressed in this case to the point where a summary judgment motion has been filed and briefed. See, e.g., Belcher v. Serriano, No. 95cv1340, 1998 U.S. Dist. LEXIS 3844, at *3 (N.D.N.Y. Feb. 26, 1998) (voluntary dismissal denied when discovery lead to dispositive motions and defendants "expended substantial resources" on the case). Forcing Defendants to again defend this meritless case in another forum, particularly one in Russia as proposed by Plaintiffs, would create unnecessary and duplicative expense. This implicates the fourth factor as well, as dismissal would lead to unnecessary relitigation. Finally, Plaintiffs' explanation for seeking to dismiss the case voluntarily is inadequate. A desire to preserve their right to bring such claims in Russia is merely another means of avoiding judgment in this case.

The Court therefore finds that all of the factors weigh against granting Plaintiffs' motion to dismiss voluntarily, and that motion will be denied.

### B. Defendant's Motion for Summary Judgment

Clintondale argues that summary judgment is appropriate because RusAir, not Clintondale, was responsible for any negligence that caused the 2011 accident. Clintondale did not own, operate, maintain or control RusAir and had no participation in or sanction of Flight 9605. Moreover, since Clintondale had no ownership interest in RusAir and RusAir was not Clintondale's agent for Flight 9605, Clintondale cannot be responsible for the Plaintiffs' injuries on any theory of corporate liability. Plaintiffs have sued the wrong party, and summary judgment is appropriate. Plaintiffs do not respond to these arguments with any substance. Instead, they argue that the Court should grant their motion to dismiss instead because doing so would do no prejudice to Defendant.

As explained above, the Court will address the motion. This action involves claims of negligence. In New York, "[t]o establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owned by the defendant to the plaintiff, (2) a breach thereof, and (3) injury resulting therefrom." Solomon v. New York, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 393, 393 (N.Y. 1985). As explained above, no evidence indicates that Clintondale itself was involved in any conduct that breached a duty to Plaintiffs or directly caused Plaintiffs harm. Clintondale cannot, therefore, be liable based on any of its own conduct.

Recognizing that Clintondale played no direct role in the events that led to the crash here at issue, Plaintiffs' allegations instead amount to a claim that Clintondale should be found responsible for the conduct of RusAir through a theory of agency liability. "It is well established that traditional vicarious liability rules ordinarily make

principals or employers vicariously liable for acts of their agents or employees in the scope their authority or employment." Meyer v. Holley, 537 U.S. 280, 285 (2003). Plaintiffs' allege in their complaint that RusAir's employees worked for Clintondale. The uncontroverted facts recited above, however, demonstrate that no one involved in the events that led to the crash of Flight 9065 was a Clintondale employee or in any way operated under Clintondale's direction or control or authority. RusAir, the party responsible for the carsh, was not Clintondale's agent. Likewise, no evidence indicates that RusAir acted with "apparent authority" from Clintondale. See, e.g., Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, 69 (2d Cir. 2003) ("Apparent authority arises from the 'written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him.'") (quoting Minskoff v. Am. Express Travel Related Servs. Co., 98 F.3d 703, 708 (2d Cir. 1996)). Similarly, Defendant could not be liable for the conduct of an independent contractor, if such a relationship even existed with RusAir. See, e.g., Brothers v. New York State Elec. & Gas Corp., 11 N.Y. 3d 251, 257-59, 898 N.E.2d 539, 542-544 (N.Y. 2008) (employers of independent contractors not generally liable for contractors' torts unless exceptions to rule, such as non-delegable duties, apply). As such, Clintondale cannot be vicariously liable for the crash.

Plaintiffs also apparently assert a theory of liability predicated on a claim that RusAir is not a corporate entity separate from Clintondale. Plaintiffs' complaint alleges that RusAir and Clintondale should be treated as a single entity because their operations were intertwined. Plaintiffs allege that "Clintondale Aviation operated and

provided its air charter, aviation management, and medical evacuation services in Russia through its wholly-owned subsidiary, RusAir, LLC," a company that had become defunct. (Complaint, dkt. # 1, at ¶ 19). The Complaint also contends that RusAir operated six aircraft from Moscow, at least one of which was owned by Clintondale Aviation. (Id. at ¶ 20). Plaintiffs allege that all of RusAir's aircraft had been "purchased directly or indirectly by Clintondale[.]" (Id.). Moreover, Plaintiffs' Complaint asserts, Clintondale shared a New York office with RusAir and hired, fired and supervised RusAir employees, including flight crews. (Id. at ¶¶ 21-22). Advertising allegedly touted RusAir as Clintondale's partner. (Id. at ¶ 23). Clintondale's website promised that RusAir planes met western safety standards. (Id. at ¶ 24). In asserting negligence against Defendant, Plaintiffs' allege that "Clintondale Aviation and RusAir were actually run as a single business enterprise, and any purported corporate distinction between the two should be disregarded." (Id. at ¶ 33). RusAir was simply an "agent and instrumentality" of Clintondale, used to perpetrate a fraud about the safety the company could deliver. (Id. at ¶ 34). Plaintiffs therefore seek damages for their decedents' injuries from Clintondale.

These allegations advance a theory of liability premised on the notion that the distinctions between two separate corporate entities are a fiction which should be disregarded, and the "corporate veil" thus "pierced." In New York, "[a] corporation is an entity that is created by law and endowed with a separate and distinct existence from that of its owners." American Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988). The limited-liability nature of corporations means that "there is a presumption of separateness between a corporation and its owners." Id. In cases where a party, as

here, alleges that the distinction between a corporation and its subsidiary is fictional, "[c]ontrol is the key. The parent must exercise complete domination 'in respect to the transaction attacked' so that the subsidiary had 'at the time' no separate will of its own, and such domination must have been used to 'commit fraud or wrong' against plaintiff, which proximately caused plaintiff's injury." Id. (quoting Lowendahl v. Baltimore & Ohio R.R., 247 A.D. 144, 157, 287 N.Y.S. 62 (1st Dept. 1936)).

The evidence provides no basis for finding Clintondale liable for the conduct of RusAir. The uncontroverted facts establish that the two corporations were separate. They had separate offices, separate employees, separate boards of directors, and separate property. While at one point the companies shared one investor and director, ownership and control of RusAir had passed into other hands long before the accident occurred. As the facts recited above demonstrate, the two companies were separate operations and there is no basis for piercing the corporate veil and holding Clintondale liable for RusAir's actions.

Because the uncontroverted facts establish that no reasonable juror could find for Plaintiffs in this action, the Court will grant the Defendant's motion for summary judgment.

## IV.     CONCLUSION

For the reasons stated above, Plaintiffs' motion for voluntary dismissal, dkt. #28, is hereby **DENIED**. Defendant's motion for summary judgment, Dkt. # 20, is hereby **GRANTED**.

**IT IS SO ORDERED**.

**DATED:** September 18, 2014

_____
Thomas J. McAvoy
Senior, U.S. District Judge